# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# TYLER DIVISION

| | | |
|---|---|---|
| **ALOFT MEDIA, LLC,** | § | |
| | § | |
| **V.** | § | **CIVIL ACTION NO. 6:08-CV-255** |
| | § | |
| **YAHOO!, INC., et al.** | § | |

## MEMORANDUM OPINION AND ORDER

This claim construction opinion construes the disputed terms in U.S. Patent Nos. 7,117,443 ("'443 patent"), and 7,194,691 ("'691 patent"). In the above-styled cause of action, Plaintiff Aloft Media, LLC ("Aloft") accuses Defendants Yahoo!, Inc. and SBC Internet Services, Inc. of infringing various claims contained in these two patents. The parties have submitted two claim terms for construction. Aloft has filed an Opening Claim Construction Brief (Doc. No. 119) and a Reply Brief (Doc. No. 134). The Defendants have filed a Responsive Claim Construction Brief (Doc. No. 127). A *Markman* hearing was held on June 11, 2009. For the reasons stated herein, the Court adopts the constructions set forth below.

## I. OVERVIEW OF THE PATENTS

The '443 patent was issued on October 3, 2006, and the '691 patent was issued on March 20, 2007. These two patents are sibling patents that share the same specification. This Court previously construed these same patents in a prior suit filed by Aloft against different Defendants. *Aloft Media, LLC v. Adobe Sys. Inc.* ("*Aloft I*"), 570 F. Supp. 2d 887 (E.D. Tex. July 29, 2008). The patents are generally directed at a computer program product that displays a graphical user interface for use in association with a network browser to correlate, store, and manage Internet content. As a user browses Internet content through an external network browser that displays content associated with a uniform resource locator ("URL"), the user is able to pre-select an identifier through a graphical

user interface. After pre-selection of the identifier, the user can select Internet content displayed by the network browser, which is correlated with the pre-selected identifier and stored for later viewing. When the user desires to later view the stored content, the user accesses the appropriate identifier to locate the stored content.

Aloft has asserted claims 36 and 37 of the '443 patent and claim 21 of the '691 patent against Defendants:

> 36. A computer program product embodied on a computer readable medium for displaying a network browser graphical user interface for storing content in association with a network browser, comprising:
> computer code for working in conjunction with a network browser window associated with a network browser for displaying Internet content associated with uniform resource locators (URLs) during network browsing; and
> computer code for displaying a plurality of identifiers in a window separate from the window in which the content is displayed;
> wherein a user is allowed to pre-select one of the identifiers which is separate from the URLs;
> wherein, after the pre-selection, selected content associated with at least one of the URLs displayed during use of the network browser is correlated with the preselected identifier in a manner that is dependent on a selection of the pre-selected identifier which is separate from the URLs, and stored;
> wherein the identifiers are capable of being manually entered by the user;
> wherein any content selected during use of the network browser results in automatic correlation of the content with the manually entered, pre-selected identifier which is separate from the URLs.
>
> 37. A computer program product embodied on a computer readable medium for displaying a network browser graphical user interface, comprising:
> computer code for working in conjunction with a network browser window associated with a network browser for displaying Internet content associated with uniform resource locators (URLs) during network browsing; and
> computer code for displaying a plurality of identifiers in a portion of the network browser graphical user interface to the side of the window in which the content is displayed;
> wherein a user is allowed to pre-select at least one of the identifiers in the portion of the network browser graphical user interface to the side of the window in

which the Internet content associated with the URLs is displayed, in association with the network browser;

wherein, after the pre-selection, selected content associated with at least one of the URLs displayed during use of the network browser is correlated with the preselected identifier in a manner that is based on the pre-selected identifier which is distinct with respect to the URLs, and stored;

wherein the pre-selected identifier is distinct with respect to the URLs and is capable of being manually modified by the user utilizing a user-selectable object adapted for modifying.

21. A computer program product embodied on a computer readable medium for use in association with a network browser, comprising:

computer code for displaying a plurality of identifiers adjacent to a window in which content associated with uniform resource locators (URLs) is displayed, in association with a network browser for browsing content on a network including the Internet;

computer code for allowing a user to pre-select at least one of the identifiers; and

computer code for correlating selected displayed content with the pre-selected identifier in a manner that is dependent on the pre-selected identifier which is distinct with respect to the URLs.

## II. APPLICABLE LAW

"It is a 'bedrock principle' of patent law that 'the claims of a patent define the invention to which the patentee is entitled the right to exclude." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc) (quoting *Innova/Pure Water Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1115 (Fed. Cir. 2004)). In claim construction, courts examine the patent's intrinsic evidence to define the patented invention's scope. *See id.*; *C.R. Bard, Inc. v. U.S. Surgical Corp.*, 388 F.3d 858, 861 (Fed. Cir. 2004); *Bell Atl. Network Servs., Inc. v. Covad Communications Group, Inc.*, 262 F.3d 1258, 1267 (Fed. Cir. 2001). This intrinsic evidence includes the claims themselves, the specification, and the prosecution history. *See Phillips*, 415 F.3d at 1314; *C.R. Bard, Inc.*, 388 F.3d at 861. Courts give claim terms their ordinary and accustomed meaning as understood by one of ordinary skill in the art at the time of the invention in the context of the entire patent. *Phillips*, 415

F.3d at 1312-13; *Alloc, Inc. v. Int'l Trade Comm'n*, 342 F.3d 1361, 1368 (Fed. Cir. 2003).

The claims themselves provide substantial guidance in determining the meaning of particular claim terms. *Phillips*, 415 F.3d at 1314. First, a term's context in the asserted claim can be very instructive. *Id*. Other asserted or unasserted claims can also aid in determining the claim's meaning because claim terms are typically used consistently throughout the patent. *Id*. Differences among the claim terms can also assist in understanding a term's meaning. *Id.* For example, when a dependent claim adds a limitation to an independent claim, it is presumed that the independent claim does not include the limitation. *Id.* at 1314-15.

Claims "must be read in view of the specification, of which they are a part." *Id*. (quoting *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995) (en banc)). "[T]he specification 'is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term.'" *Id.* (quoting *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)); *Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1325 (Fed. Cir. 2002). This is true because a patentee may define his own terms, give a claim term a different meaning than the term would otherwise possess, or disclaim or disavow the claim scope. *Phillips*, 415 F.3d at 1316. In these situations, the inventor's lexicography governs. *Id.* Also, the specification may resolve ambiguous claim terms "where the ordinary and accustomed meaning of the words used in the claims lack sufficient clarity to permit the scope of the claim to be ascertained from the words alone." *Teleflex, Inc.*, 299 F.3d at 1325. But, "'[a]lthough the specification may aid the court in interpreting the meaning of disputed claim language, particular embodiments and examples appearing in the specification will not generally be read into the claims.'" *Comark Commc'ns, Inc. v. Harris Corp.*, 156 F.3d 1182, 1187 (Fed. Cir. 1998) (quoting

4

*Constant v. Advanced Micro-Devices, Inc.*, 848 F.2d 1560, 1571 (Fed. Cir. 1988)); *see also Phillips*, 415 F.3d at 1323. The prosecution history is another tool to supply the proper context for claim construction because a patent applicant may also define a term in prosecuting the patent. *Home Diagnostics, Inc., v. Lifescan, Inc.*, 381 F.3d 1352, 1356 (Fed. Cir. 2004) ("As in the case of the specification, a patent applicant may define a term in prosecuting a patent.").

The prosecution history is another tool to supply the proper context for claim construction because a patent applicant may also define a term in prosecuting the patent. *Home Diagnostics, Inc., v. Lifescan, Inc.*, 381 F.3d 1352, 1356 (Fed. Cir. 2004) ("As in the case of the specification, a patent applicant may define a term in prosecuting a patent."). The doctrine of prosecution disclaimer is well established and prevents a patentee from recapturing through claim interpretation specific meanings disclaimed during the prosecution of the patent. *See Omega Eng'g, Inc. v. Raytek Corp.,* 334 F.3d 1314, 1223 (Fed.Cir.2003). The prosecution history must show that the patentee "clearly and unambiguously" disclaimed or disavowed the proposed interpretation during the patent's prosecution to obtain claim allowance. *Middleton, Inc. v. 3M Co.,* 311 F.3d 1384, 1388 (Fed.Cir.2002). "Indeed, by distinguishing the claimed invention over the prior art, an applicant is indicating what the claims do not cover." *Spectrum Int'l v. Sterilite Corp.,* 164 F.3d 1372, 1378-79 (Fed.Cir.1998). "As a basic principle of claim interpretation, prosecution disclaimer promotes the public notice function of the intrinsic evidence and protects the public's reliance on definitive statements made during prosecution." *Omega Eng'g, Inc.,* 334 F.3d at 1324.

Although extrinsic evidence can be useful, it is "less significant than the intrinsic record in determining 'the legally operative meaning of claim language.'" *Phillips*, 415 F.3d at 1317 (quoting *C.R. Bard, Inc.*, 388 F.3d at 862). Technical dictionaries and treatises may help a court understand

the underlying technology and the manner in which one skilled in the art might use claim terms, but technical dictionaries and treatises may provide definitions that are too broad or may not be indicative of how the term is used in the patent. *Id*. at 1318. Similarly, expert testimony may aid a court in understanding the underlying technology and determining the particular meaning of a term in the pertinent field, but an expert's conclusory, unsupported assertions as to a term's definition is entirely unhelpful to a court. *Id*. Generally, extrinsic evidence is "less reliable than the patent and its prosecution history in determining how to read claim terms." *Id*.

## ANALYSIS

The parties have submitted two terms for construction.

### I. Store/Storing

Defendants propose that the term "store/storing" be construed as "kept/keeping for use while disconnected from the Internet." Defendants contend that this construction is consistent with the patent's description of the invention as a computer program product for storing content on a user device. They argue that the only embodiment disclosed in the patent is one in which content is stored by a user on a user device, rather than on a server. Because the user would not need an Internet connection to access this stored content, Defendants argue that the content is stored for use while disconnected from the Internet. Aloft argues that no construction is necessary, and that none of the claims are limited to storing content on a user device for offline use.

The Court begins its construction by consulting the claim language. *Phillips*, 415 F.3d at 1314. In general, courts must impose a "heavy presumption" in favor of the ordinary meaning of claim terms, which can only be overcome by statements of "clear disclaimer" expressly indicating

"manifest exclusion or restriction." *Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 913 (Fed. Cir. 2004); *Brookhill-Wilk 1, LLC v. Intuitive Surgical Inc.*, 334 F.3d 1294, 1301 (Fed. Cir. 2003); *see also Phillips*, 415 F.3d at 1312-13. In this case, the plain and ordinary meaning of the term "storing" is not limited to storing for use while disconnected from the Internet or solely on a user device. Nothing in the claim language contradicts this conclusion.

In fact, Defendants' construction is inconsistent with other claim language in the patent. *Phillips*, 415 F.3d at 1314 ("Other claims of the patent in question, both asserted and unasserted, can also be valuable sources of enlightenment as to the meaning of a claim term."). Independent claim 40 recites "selected content . . . is capable of being manually added by the user, for being stored in user computer memory." This claim limitation strongly implies that the term "storing" does not inherently mean storing on a user device. *See Phillips*, 415 F.3d at 1314 ("the claim in this case refers to 'steel baffles,' which strongly implies that the term 'baffles' does not inherently mean objects made of steel").

Defendants argue that their construction is mandated by the specification and prosecution history. They argue that the only type of data storage described in the specification is storage on a user device. Defendants point out that the only "memory" described in the patent is random access memory ("RAM") and read only memory ("ROM") coupled with a central processing unit ("CPU") of a workstation. '443 Pat. Fig. 2, 4:65-67. They cite numerous statements in the specification which describe information being "stored in memory," and identifiers being correlated with URLs by "the processor coupled to the memory." *See* '443 Pat. Figs. 6, 10, 5:57-60, 9:1-20. Based on these statements, Defendants argue that the only embodiment disclosed in the specification is one in which content is stored by a user on a personal computer. *See Praxair Inc. v. ATMI, Inc.*, 543 F.3d 1306,

1324 (Fed. Cir. 2008) ("The claims of the patent must be read in light of the specification's consistent emphasis on [the] fundamental feature of the invention."); *see also Microsoft Corp. v. Multi-Tech Sys., Inc.*, 357 F.3d 1340, 1351-52 (Fed. Cir. 2004).

While Defendants correctly point out that the word "memory" is only used to describe RAM and ROM, and that Figure 2 depicts a user device with RAM and ROM connected to a CPU, Defendants have failed to show that the patentee disclaimed storing content on a server or that storing content for offline use is a "fundamental feature" of the invention. The patent specification explains that Figure 2 is a "representative hardware environment that may be associated with the various network components of Fig. 1." '443 Patent at 4:58-60. Because Figure 1 depicts both user devices and servers, '443 Patent at 3:17-19, one of ordinary skill in the art would understand that Figure 2's depiction of a "representative hardware environment" would not necessarily limit the memory discussed in the patent to that found on a user device. Thus, one of ordinary skill in the art would also understand that the portions of the specification cited by Defendants are consistent with the idea that storage may occur on a user device or a server. At best, Defendants have shown that one preferred embodiment may store content only on a user device. *See Comark Commc'ns, Inc.*, 156 F.3d at 1187 (courts must not read limitations of the preferred embodiment into the claim language).

Furthermore, the patent describes storing content "in memory of a present machine or across a network." '443 Pat. at 10:38-40. Although this passage appears to describe an aspect of the invention not covered by any of the asserted claims in this case, it strongly implies that content may be stored either on a user device or on a network server. At the very least, this passage indicates that the patentee did not implicitly define the term "storing" as "storing for offline use," or disclaim storage across a network. *See Liebel-Flarsheim Co.*, 358 F.3d at 913.

Finally, the one feature of the invention described as "critical," is that "the documentation related to the selected URLs may be archived for later use . . . as content of URLs are often subject to change." '443 Pat. at 9:6-10. Because, as shown above, documentation or content may be stored for later use on a user device or a server, the patent specification offers no indication that storage for offline use is a "fundamental feature" of the invention. *See Praxair Inc.*, 543 F.3d at 1324.

Defendants also look to the prosecution history for support."[W]here the patentee has unequivocally disavowed a certain meaning to obtain his patent, the doctrine of prosecution disclaimer attaches and narrows the ordinary meaning of the claim congruent with the scope of the surrender."*Omega Eng'g, Inc.,* 334 F.3d at 1324. During prosecution, the patentee criticized the prior art reference Microsoft Internet Explorer, because it required a user to enable a "Make available off-line" feature in order for a user to store content. The patentee argued that the claimed invention did not require this sort of cumbersome step for a user to "store content for offline use." '443 Pat. Pet. to Make Special, May 3, 2004, at 5-7. Later, during prosecution, the patentee stated: "By this claimed feature [of pre-selecting identifiers], the cumbersome nature of the above prior art is avoided, since a user does not have to post-select an identifier when attempting to store content for offline use." '443 Pat. Amendment D, May 5, 2006, at16. Defendants argue that these statements constitute a clear disavowal of claim scope.

Defendants' argument is unavailing. The primary purpose of prosecution disclaimer is to prevent a patentee from recapturing claim scope that was disclaimed in order to obtain claim allowance. *Omega Eng'g, Inc.,* 334 F.3d at 1323-24. In this case, the patentee distinguished the prior art by emphasizing the pre-select feature of the claimed invention and its lack of cumbersome steps, not the fact that the invention could store content for offline use. '443 Pat. Amendment D, May 5,

9

2006, at16; '443 Pat. Pet. to Make Special, May 3, 2004, at 5-7. In fact, the prosecution history clearly shows that both the prior art and the claimed invention were capable of storing content for offline use. '443 Pat. Pet. to Make Special, May 3, 2004, at 5-7. Thus, the Court cannot conclude that the patentee's recitation of storage for offline use as a feature of the invention constitutes a clear and unequivocal disclaimer of any other sort of storage.

Having rejected Defendants' proposed construction and thereby resolving the parties' claim scope dispute, the Court finds that the term "stored/storing" will be easily understood by a jury and that no construction is necessary.

## II.  Selected Content and Selected Displayed Content

Defendants propose that the terms "selected content" and "selected displayed content" be construed as "a distinct item clicked, marked or highlighted on a screen to perform an operation on the item. The distinct item, or content, does not include a URL." Aloft argues that no construction is necessary. At the hearing, the parties had difficulty articulating the basis for the disagreement regarding these terms. Nonetheless, a number of discrete agreements were reached. Both sides agree that: (1) "selected content" and "selected displayed content" do not include a URL, "Hr'g Tr. 45:9-10; (2) "selected content" and "selected displayed content" may include an entire web page, Hr'g Tr. 44:8-14, 50:18-19; (3) a product which stores metadata or un-displayed content along with selected content satisfies the claim limitation at issue, Hr'g Tr. 63:6-9, 64:11-21; and (4) "selected content" must be selected with affirmative user action. DEF'S RESP. at 13; PL.'S REPLY at 1-2.

In light of these agreements, the Court finds Defendants' proposed construction to be inappropriate for a number of reasons. First, because the parties have agreed that selected content

does not include a URL, there is no need to restate this agreement in a construction of this term. Second, Defendants' proposed construction limits the term "selected" to "clicked, marked, or highlighted on a screen." However, Defendants concede that these "are merely examples of ways the user can specify the selected item." Def.'s Resp. at 15. Because the parties agree that selection requires affirmative user interaction, the Court sees no reason to limit this term to the examples listed by Defendants. Finally, Defendants' reference to a "distinct item" injects unnecessary ambiguity into the claim language. Because this phrase does not appear in the specification of the patents, it is unclear if it would include multimedia files, highlighted text, or portions of a web page. Such a result would be inconsistent with the patent's description of "documentation related to the selected URLs" as "web pages, articles, spread sheets, slide shows, compressed documents such as files in Portable Document Format (.pdf), etc. and can even include multimedia files and streaming multimedia." '443 Patent 9:3-6; *Aloft I*, 570 F. Supp. 2d at 893-894. The Court has no reason to conclude that the "content" of the asserted claims is narrower than this exemplary list described in the specification.[1]

Defendants' primary argument appears to be that the claims require that "selected content" be visually depicted on a computer screen, selected by a user, and stored. For example, consider a web page with an image of a box labeled "audio" that contains a link to an audio file stored on a server. When a user views the web page and clicks on the box, the user's computer retrieves the audio file and plays it. A software product may allow a user to select the box labeled "audio." Defendants argue that if that product stores only the link to the audio file or the audio file itself, but

---

[1] In *Aloft I* this Court stated: "Defendants also expressed concern that "content" could potentially encompass non-displayable information that "documentation" could not. However, Defendants do not explain how the word "documentation" will resolve this concern. A URL can just as easily reference a hidden document as it can hidden content." 570 F.Supp. 2d at 894 n. 3.

11

not the box displayed on the web page, that product would not satisfy the claims at issue because it does not store the displayed, *i.e.* visually depicted, content. Hr'g Tr. 67:14-25. Plaintiff argues that the product would satisfy the claim limitation because it stores content that has been selected, *i.e.* the link to the audio file. Hr'g Tr. 64:11-21.[2]

The Court sees no reason to limit the "selected content" of claims 36 and 37 to the exact visually depicted content selected by a user. Rather, as explained by the Court in *Aloft I*, content may include spread sheets, slide shows, pdfs, multimedia, and streaming multimedia files, which need not be visually depicted on a screen. The Court must begin its construction by consulting the claim language at issue. *Phillips*, 415 F.3d at 1314. Claims 36 and 37 recite "selected content associated with at least one of the URLs displayed during use of the network browser is . . . stored." This "selected content" may include a link or an audio file, among other things, as those items may be associated with a "URL[] displayed during use of the network browser." This is true even though the link or audio file is not visually depicted on the screen. Because Defendants do not point to any evidence other than the language of the claims at issue, the Court sees no reason to inject Defendants' limitation into the claims. Having rejected Defendants' argument, the Court finds that this term can be easily understood by a jury and that no construction is necessary.

For the reasons stated above, Defendants' proposed construction for the term "selected displayed content" is inappropriate. The Court finds that a jury could easily understand this term and that no construction is necessary.

---

[2] The parties presented this example at the *Markman* hearing, and the Court has relied on it to explain the parties' positions. However, the Court does not offer any infringement analysis or express any opinion as to the functionality of any of the accused products.

### III. Automatic

Prior to the hearing, the parties agreed that the term "automatic," which appears in claim 36 of the '443 patent, should be construed as "without user intervention."

## CONCLUSION

For the foregoing reasons, the Court interprets the claim language in this case in the manner set forth above. For ease of reference, the Court's claim interpretations are set forth in a table attached to this opinion as Appendix A.

**So ORDERED and SIGNED this 13th day of July, 2009.**

*[signature: John D. Love]*

JOHN D. LOVE
UNITED STATES MAGISTRATE JUDGE

**Appendix A**

| Claim No(s). | Disputed Terms | Aloft's Proposed Construction | Defendants' Proposed Construction | Court's Construction |
|---|---|---|---|---|
| '443 Patent, cls. 36 and 37<br><br>'691 Patent, cl. 21 | selected content; selected displayed content | No construction of this term is required. | A distinct item clicked, marked or highlighted on a screen to perform an operation on the item. The distinct item, or content, does not include a URL. | No construction necessary |
| '443 Patent, cls. 36 and 37 | stored; storing | No construction of this term is required. | Kept / Keeping for use while disconnected from the Internet. | No construction necessary |
| '443 Patent, cl. 36 | Automatic | AGREED | AGREED | without user intervention |